IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DAVID A. STEBBINS                                                                    PLAINTIFF

V.                         Case No. 3:17-CV-03016

STATE OF ARKANSAS and
BOONE COUNTY CIRCUIT COURT CLERK                                 DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff David A. Stebbins has filed a Motion for Reconsideration and to Recuse (Doc. 55) and Brief in Support (Doc. 56). Stebbins seeks reconsideration of the Court's April 14, 2017 Order (Doc. 49) and final Judgment (Doc. 50) dismissing his case. He has also asked the undersigned to recuse. Stebbins is *pro se* and proceeding *in forma pauperis*. The dismissal of Stebbins' complaint followed this Court's screening pursuant to 28 U.S.C. § 1915(e)(2)(B). Stebbins' Motion raises one point worthy of further discussion.

### I. LEGAL STANDARD

A motion for reconsideration of a final judgment or order may be made pursuant to either Federal Rule of Civil Procedure 59(e) or 60(b). "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 761 (8th Cir. 2008) (quoting *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal citations and quotations omitted)). According to Rule 60(b), a party may be relieved from an order of the Court under certain enumerated circumstances, including the existence of "mistake, inadvertence, surprise, or excusable neglect" or "any

1

other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) and (6). Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986).

### A. Pertinent Facts As Alleged In The Complaint

When Stebbins filed his federal complaint (Doc. 2), he said the Circuit Clerk of Boone County was in the midst of preventing him from perfecting the complete trial record for an appeal he had filed in the Arkansas Court of Appeals. The state appeal stemmed from a 2012 battery and malicious prosecution lawsuit that Stebbins filed against his own father in the Circuit Court of Boone County, Arkansas.[1] According to the federal complaint in this case, Circuit Judge Russell Rogers signed an order on January 23, 2015, dismissing (at least some of) Stebbins' claims.[2] According to Stebbins, the Boone County Circuit Clerk intentionally removed Judge Rogers' January 23rd (partial) dismissal order from the official court file as she was preparing the record on appeal. Stebbins included his own copy of the order with the addendum to his appeal brief, but the Arkansas Court of Appeals refused to consider the order—unless it was contained in the record on appeal, and

---

[1] Although Stebbins' federal complaint glosses over the facts giving rise to his state court complaint, a copy of the complaint was attached to Stebbins' Motion for Summary Judgment. *See* Doc. 21, pp. 9-13. According to his state court complaint, Stebbins was residing with his father. A physical altercation broke out after Stebbins complained to his father about slow internet speed. The police were called. Stebbins was arrested. Stebbins then sued his father for, among other things, battery, malicious prosecution, conversion (of his internet router), and defamation. Stebbins alleged entitlement to $1,000,000.00 in compensatory damages, and $10,000,000.00 in punitive damages. *Id.*

[2] This "order" was not attached to Stebbins' complaint, but it was included with his Motion for Summary Judgment. *See* Doc. 21, pp. 15-16. The "order" in question is actually a letter from Judge Rogers addressed to the parties in which he makes rulings on an assortment of pending motions. The letter concludes by directing the parties to contact the Judge's case coordinator for available trial dates. The letter ruling does not specifically dismiss any particular claims. *Id.*

therefore the Court of Appeals directed the Circuit Clerk to correct the deficiency. According to Stebbins, the Circuit Clerk failed to timely supplement the record—thus making her liable for a violation of Stebbins' federal rights. The State of Arkansas is liable too—Stebbins' theory continues—because as the Circuit Clerk's employer, it failed to enforce the Court of Appeals' order to supplement.[3]

For background purposes, Stebbins recites numerous federal lawsuits that he has filed in previous years under the American with Disabilities Act. Then—quoting excerpts from orders Judge Rogers entered in June and July 2015 (*i.e.*, six months after the date of the missing dismissal order),[4]—Stebbins surmises that Judge Rogers harbors personal animosity towards Stebbins because of his litigation history.[5] According to Stebbins, Judge Rogers "hates [Stebbins], and was ruling against [him], regardless of the facts or law, just

---

[3] Stebbins does not identify the state actor responsible for failing to enforce the order to supplement. The complaint says "they have not fined [her] . . . [and] they have not held her in contempt." Doc. 2, ¶19. The Court takes judicial notice that the Circuit Clerk is an elected public official of Boone County, Arkansas. The Court further observes that the Arkansas Court of Appeals is the only entity with judicial authority to enforce its own "order to supplement" by fine or contempt. This Court therefore assumes that when Stebbins says the State is liable, he is referring generally to the third branch of Arkansas' state government, *i.e.*, the Arkansas Judiciary. In all practical effect, Stebbins has sued the appellate court that is currently presiding over a state court appeal involving the exact same factual matter as the federal case at bar. As such, Stebbins' complaint is nothing more than a premature collateral attack on procedural matters intrinsic to a pending appeal in the Arkansas Court Appeals.

[4] The orders from which these excepts are taken were not attached to Stebbins' complaint, but were included as exhibits to Stebbins' Motion for Summary Judgment. *See* Doc. 21, pp. 34-39. The Court has read the entirety of Judge Rogers' orders and finds that Stebbins' excerpts have been stated out of context and are grossly misleading.

[5] Later Stebbins claims that "nearly every officer of the State of Arkansas who I have ever come into contact with, from 2010 to the present, not just Judge Rogers, has made no secret that they disdain me ***because of my litigation history***." (Doc. 2, p. 7 (emphasis added)).

3

for that reason alone." (Doc. 2, ¶ 21). With this in mind, Stebbins draws the conclusion that the Circuit Clerk and the State of Arkansas are liable to him because "we can reasonably assume that [the defendant's] actions are similarly motivated." *Id.* at ¶ 23.

Next, Stebbins explains that the defendants' failure to timely supplement the record has resulted in unnecessary delays in the resolution of his appeal, which in turn has proximately caused him damages in the sum of $11,000,000.00 (the value Stebbins assigns to his state court causes of action),[6] plus post-judgment interest (that would have accrued on such an award) in the sum of $3,013.70 per day, backdated to October 7, 2016. *Id.* at ¶ 39. Stebbins also seeks an injunction that would require "the State of Arkansas to never again retaliate against [him]." *Id.* at ¶ 37.

In an Amended Complaint that Stebbins sought to file (Doc. 41), he provides an update on the missing order. "It has recently surfaced . . . that the [missing order] was never in fact filed in the Circuit Court in the first place." *Id.* at ¶ 4. (Thus explaining why the Circuit Clerk did not include it as part of the official record on appeal). Now swapping horses, Stebbins contends that Judge Rogers "purposely pretended to issue an order in a civil case when he really didn't." *Id.* at ¶ 28(a). This was "almost certainly motivated by my litigation history." *Id.* at ¶ 16. In Stebbins' view, this makes Judge Rogers liable for "First Amendment retaliation," a claim he specifically seeks to bring pursuant to §1983. *Id.* at ¶ 23.[7]

---

[6] Stebbins omits the fact that the state court jury found against Stebbins on his claims to these very same damages.

[7] Stebbins says he received the order via email on January 23, 2015. (Doc. 41, ¶ 10). According to Stebbins, the order dismissed four of Stebbins' six tort claims—leaving two for trial, but that is not correct. The "missing order" ruled on eight pre-trial motions, but it did not specifically dismiss any claims. *See* footnote 2, *supra*.

4

In summary, the logic of Stebbins' allegations goes something like this: (1) he has been the victim of past instances of disability discrimination, (2) for which he has previously filed many *federal* lawsuits seeking redress under the ADA, (3) the cumulative effect of which has resulted in him being viewed with personal animus and disdain by nearly every *state* law enforcement official that he has encountered since 2010, and (4) therefore any legal circumstance, ruling, or outcome that Stebbins perceives to be adverse, (5) gives rise to a claim for retaliation under the ADA.

### B. This Court's Screening Pursuant to 28 U.S.C. § 1915(e)(2)

For the reasons explained in greater detail in its Memorandum Opinion and Order (Doc. 49), this Court screened Stebbins' complaint pursuant to 28 U.S.C. §1915(e)(2), and dismissed the case with prejudice. Observing that the defendants were immune from such suits, the Court found that the complaint failed to state a cause of action under § 1983, and that the claims were otherwise frivolous and without merit.

### C. Stebbins' Motion for Reconsideration

Stebbins' Motion for Reconsideration and Brief in Support (Docs. 55 and 56) alleges many superfluous and impertinent bases for reconsideration, which this Court need not address. However, the Court does find one contention in particular to be worthy of greater explanation. Stebbins argues that it was error for the Court to construe his complaint as one seeking relief pursuant to § 1983. Stebbins insists that his claims were not premised on constitutional violations, but rather unlawful retaliation in violation of the American with Disabilities Act ("ADA"). Thus, Stebbins argues, the Court's immunity analysis was mistaken.

It is true that the Court construed Stebbins' stated allegations more broadly—as the

5

denial of access to the courts or denial of some other fundamental or statutory right—and for that reason the Court analyzed the Complaint through the prism of Section 1983.[8] The Court need not restate the basis for its ruling. Suffice it to say that such construction was not only generous, but premised on the substance of what was actually plead.

In seeking reconsideration, and despite the substance of his allegations, Stebbins contends that his complaint should have been construed as being limited to a claim for ADA-based retaliation. Stebbins' complaint does mention the ADA ("[many people] believe they have no obligation under the Americans with Disabilities Act to provide [him] reasonable accommodations for [his disability]"). (Doc. 2, ¶10). Stebbins also explains that his qualifying disability, Asperger's Syndrome, "hinders his ability to socialize with others, make friends, get jobs, get a girlfriend, etc." *Id*. at ¶ 9.[9] Stebbins suggests that his lack of tactfulness is frequently mistaken for intentionally offensive behavior—instead of the impairments of an invisible disability for which he is entitled to accommodation. "Thus, Plaintiff was faced, many many times, with two options: Either suck it up and let people do whatever they want to him and walk all over him, or file suit in federal court. Plaintiff quickly

---

[8] For example, Stebbins claims the defendants' actions were "motivated almost exclusively by personal animosity due to [his] litigation history." (Doc. 2, ¶ 23). Stebbins' complaint repeats this same premise no less than nine times.

[9] Asperger's Syndrome "is a pervasive developmental disorder that falls within the autistic spectrum. . . usually [found in those with] average or above average intelligence. The condition is characterized by difficulties with social interaction, social communication and flexibility of thinking or imagination. . . A pattern of behaviors and abilities [has been] identified, predominantly amongst boys, including a lack of empathy, impaired imagination, difficulty in making friends, intense absorption in a special interest and often problems with motor co-ordination. [P]eople with Asperger's Syndrome will exhibit some or all of these characteristics to a greater or lesser degree, many tend to experience isolation and a lack of understanding in their everyday lives, which often results in frustration, anger, depression and a lack of self-esteem." http://www.aspergerfoundation.org.uk/what_as.htm (last visited May 5, 2017).

decided that the former was 100% out of the question." *Id.* at ¶ 10. It is also true that in "[t]he Law" section of his complaint, Stebbins lists the elements of a retaliation claim under the ADA, citing *Amir v. St. Louis University*, 184 F.3d 1017, 1025 (8th Cir. 1999). *Id.* at ¶ 30.

But merely putting a label and a case citation in a complaint—without stating plausible facts in support—is somewhat like putting a dress on a pig and calling her a beauty queen. Simply saying it doesn't make it so. Plausibility is determined by factual substance, not window dressing. *See Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that a plaintiff's complaint must assert more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to "raise a right to relief above the speculative level"; instead, a cause of action that is considered plausible and states a valid claim for relief will contain "enough factual matter . . . . to raise a reasonable expectation that discovery will reveal evidence of [a violation of law]").

To state a plausible claim for retaliation under the ADA, Stebbins' complaint must have (1) identified a statutorily protected activity in which he engaged; (2) identified an adverse action taken against him; and (3) plausibly stated the factual connection between the protected activity and the adverse action. *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013). Here, among other defects, Stebbins' complaint fails to state any plausible basis (beyond wildly self-serving conjecture) as to how or why the Boone County Circuit Clerk or the Arkansas Court of Appeals would be motivated to delay Stebbins' *state* court appeal, simply because Stebbins had previously filed ADA lawsuits against non-state actors in *federal* court.

Not only is Stebbins' causal connection fantastically speculative—it is demonstrably

7

false. The "missing order of dismissal" didn't dismiss anything, it ruled on pre-trial motions. In fact, Judge Rogers allowed the case to proceed to a jury trial, which returned a verdict against Stebbins—a fact conveniently absent from his complaint. And Stebbins self-serving and fanciful conclusion—that Judge Rogers must have ignored the facts and the law and made rulings out of nothing but pure retaliation for Stebbins' prior protected activities—completely ignores the actual facts and disposition of the case before Judge Rogers. Fortunately, the Arkansas Court of Appeals has summarized them as follows:[10]

> The parties to this appeal are appellant David A. Stebbins and his father, appellee David D. Stebbins. At the time of the incident giving rise to this litigation, the son was residing with the father. In an attempt to eliminate or reduce previous friction between the parties, the parties had executed a written agreement setting forth the terms and conditions whereby the son could live in the father's residence. On November 24, 2011, the police were called to the home of the father, David D. Stebbins and found that the father had suffered knife wounds to his face. The son, David A. Stebbins, was arrested and charged with battery. The son subsequently filed suit against his father claiming that his father had breached the written contract between the parties that night by failing to provide adequate high-speed internet service. Appellant further claimed that, after he confronted his father about the problem with the internet, his father punched him in the face, and then the father purposely cut his own face with a knife to make it appear as if he had been attacked by his son. Appellant asserted in his complaint that his father pressed criminal charges against him knowing them to be false, and used the alleged attack as a means to circumvent the lease-agreement provision of the parties' contract and unlawfully evict appellant from his house. The complaint alleged six separate causes of action, including malicious prosecution, abuse of process, defamation, breach of contract, conversion, and battery. Appellant subsequently filed an amended complaint, adding additional claims for identity theft, tort of outrage, negligence, and forgery. The case was tried to a jury, and the jury's verdicts were returned in favor of the father David D. Stebbins. Thereafter, the trial court entered a judgment dismissing appellant's complaint with prejudice.

(Doc. 21, pp. 23-24).

---

[10] The Court "may take judicial notice of judicial opinions and public records." *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citation omitted).

8

Stebbins is an intelligent person who is well-versed in legal research and a good writer. He no doubt possesses some of the hallmark characteristics of Asperger's Syndrome—which likely explains why he is so quick to assume the worst in others, as well as his willingness to make such extraordinary leaps to baseless conclusions. The Court further recognizes that, as a *pro se* litigant, Stebbins benefits from a less stringent pleading standard. But here, Stebbins' distorted perceptions of reality, even if influenced in part by his Asperger's Syndrome, do not alleviate or excuse the necessity of pleading plausible facts in support of a recognized cause of action. Nor is this Court required to accommodate factually frivolous and clearly baseless lawsuits. Stebbins' conclusion that Judge Rogers—and, by extension, the named defendants—were acting out of personal animosity because of Stebbins' prior ADA litigation, is not only implausible, but false. Judge Rogers' ultimate dismissal was predicated on jury verdicts, not spitefulness. Thus, even when framing the allegations as Stebbins prefers to view them, the complaint fails to state a plausible cause of action for ADA-based retaliation, and therefore the complaint is still subject to summary dismissal under Section 1915(e)(2)(B)(i)-(ii). Stebbins' request for reconsideration is therefore **DENIED**.

Stebbins separately contends that the Court erred in dismissing his case, *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B). First, he argues that when he was granted *in forma pauperis* status in the Eastern District of Arkansas, prior to the case being transferred to this District, the district judge[11] performed an initial screen of the Complaint and made a determination on the merits that the case was not subject to dismissal under Section 1915(e)(2)(B). Stebbins is wrong. Neither the Order (Doc. 4) granting *in forma*

---

[11] Hon. Brian S. Miller.

9

*pauperis* status, nor the Order (Doc. 7) directing service of the Complaint discussed the merits of the Complaint. Regardless, this Court may review the merits of a complaint filed by an individual proceeding *in forma pauperis* and dismiss the case "at any time." 28 U.S.C. § 1915(e)(2)(B). Here, the Court conducted its screening within six weeks of the case being transferred to the Western District of Arkansas. As explained by the Supreme Court in *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), the *in forma pauperis* statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." As the Court's Order of dismissal explained, allowing this case to proceed further would have resulted in a waste of judicial resources, as the lawsuit lacked any possibility of merit.

### D. Stebbins' Motion to Recuse

Stebbins' additional request that the undersigned recuse himself from this and all future lawsuits he might bring is **DENIED**. Stebbins believes that the undersigned dismissed this case out of personal "hatred" or "retaliation," rather than for the reasons set forth in the Order of dismissal. Once again, Stebbins confuses lack of merit with ill motivation. The Court would like to reassure Mr. Stebbins that his case is not being singled out. Screening pursuant to Section 1915(e)(2)(B) is a routine part of the Court's job, and the Court frequently dismisses frivolous claims—something Stebbins should know full well.

Stebbins has been designated a restricted filer in the Western District of Arkansas, due to his past abuse of the judicial system. *See David A. Stebbins v. Rita F. Stebbins and David D. Stebbins*, Case No. 3:12-CV-3130, Doc. 10 (W.D. Ark. 2012) (ordering that

Stebbins is limited to filing no more than one case in federal court for the Western District of Arkansas every three calendar months; and that he is enjoined from filing any lawsuit in federal court for the Western District of Arkansas unless he first posts a $100 refundable bond with the Clerk of Court, attaches a copy of the order (Doc. 10, Case No. 3:12-CV-3130) to his complaint, and includes a signed affirmation that states the date he last filed a new case in this District).

The Court suspects that Stebbins filed the instant action in the Eastern District of Arkansas in order to avoid the filing restrictions that were placed upon him in this District. As the Order of Transfer correctly observed, this case should have been filed in the Western District, as "Boone County, Arkansas, is located in the Western District of Arkansas[,] and it appears that all the facts alleged occurred there." (Doc. 24). Stebbins is therefore cautioned that if he attempts to avoid the filing restrictions in this District by improperly filing his case in another District—and then waiting for a transfer order—the Court will issue an order to show cause as to why sanctions should not be levied against him for seeking to circumvent the orders of this Court.

**IT IS THEREFORE ORDERED** that the Motion for Reconsideration and to Recuse (Doc. 55) is **DENIED**. No newly discovered evidence or manifest errors of law or fact have been identified by Stebbins or by the Court so as to justify the extraordinary relief permitted under Rule 59 or Rule 60. Of course, if Stebbins is dissatisfied with the Court's dismissal of his case, he may take an appeal.[12]

**IT IS FURTHER ORDERED** that Mr. Stebbins is **PROHIBITED** from communicating with Chambers via phone or email unless specifically directed to do so.

---

[12] But he is not given permission by this Court to do so *in forma pauperis*. See Doc. 53.

IT IS SO ORDERED on this 9th day of May, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE